MARTIN, Circuit Judge:
Frank Douglas, a federal inmate, appeals the District Court’s dismissal of his Federal Tort Claims Act (FTCA) case. He claims that a Bureau of Prisons (BOP) official withheld wages he was owed for his work while incarcerated. The District Court held that this claim was barred by the FTCA’s discretionary function exception. Mr. Douglas also filed related claims of discrimination, retaliation, and intentional infliction of emotional distress. The District Court dismissed these other claims based on the FTCA’s exhaustion requirements. We reverse the District Court on the pay claim and affirm for the others.
I.
Mr. Douglas is a 56-year-old federal inmate. When he filed this lawsuit, he was incarcerated at FCC Coleman, a penitentiary in Florida, where he worked a trash shift multiple days a week. According to Mr. Douglas, this shift required him to “operate[ ] a very dangerous recycling] machine for card-board.” Mr. Douglas was one of two operators of this machine, the contents of which “weighed one or two tons” and had to be loaded into a semi-truck three or four times a week.
The BOP assigns inmate workers to one of four grades of “performance pay,” with Grade 1 workers paid the most. See 28 C.F.R. § 545.26(b). According to Mr. Douglas’s complaint, “[m]e and my supervisor went over my grade and pay numerous times.” Then, on March 15, 2012, Mr. Douglas and his supervisor both signed a “Work Performance Rating” form indicating that Mr. Douglas had worked 154 hours of “satisfactory work” in the past month. The form also indicated that Mr. Douglas’s “Performance Pay Grade Class” was 1 and that he would be paid $91.60. However, when Mr. Douglas was paid four days later, he received $7.20. The same thing happened the next month, when Mr. Douglas’s supervisor again approved $91.60 for 154 hours of Grade 1 work but Mr. Douglas was paid only $12.00. Mr. Douglas alleges that these changes to his pay were made by a prison official named Lieutenant Barker. According to the complaint, Lt. Barker’s role with respect to inmate pay is entering pay data into a computer system. Mr. Douglas also alleges that Lt. Barker said that he reduced the pay because “I don’t like Inmate Douglas black ass and I’m going to pay him what I want.”
Básed on these allegations, Mr. Douglas filed' a “Small Claims for Property Loss” form with the BOP on April 9, 2012. The BOP sent Mr. Douglas a final denial of this claim on June 21, 2012. Mr. Douglas then filed this lawsuit on June 27, 2012. By the time he sued, Mr. Douglas had also filed BOP complaints alleging retaliation, racial *1273 discrimination, and intentional infliction of emotional distress, but these were not fully appealed until later. The government moved to dismiss the suit under Rule 12(b)(6), arguing that Mr. Douglas’s pay claim was barred by the FTCA’s discretionary function exception and that the other claims were barred by the FTCA’s exhaustion requirements. The motion was styled “alternatively” as a motion for summary judgment and included excerpts from various BOP documents, as well as a declaration by the prison’s Inmate Performance Pay Coordinator. The District Court granted the motion to dismiss on March 12, 2014.
II.
We first address whether Mr. Douglas’s pay claim was barred by the FTCA’s discretionary function exception. We review this question of law de novo. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir.1998).
A.
The FTCA’s discretionary function exception provides that the United States does not waive sovereign immunity for claims “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government.” 28 U.S.C. § 2680(a). We apply this exception by answering two questions. “First, we consider the nature of the conduct and determine whether it involves ‘an element of judgment or choice.’ ” Ochran v. United States, 117 F.3d 495, 499 (11th Cir.1997) (quoting United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)). “[Cjonduct does not involve an element of judgment or choice, and thus is not discretionary, if ‘a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.’ ” Id. (quoting Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273). “Second, if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy.” Id.
When a plaintiff challenges the actions of an individual employee who is working within a broader administrative scheme, “a court must first consider whether the action is a matter of choice for the acting employee.” Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). “This inquiry is mandated by the language of the exception,” which “protects the discretion of the executive or the administrator to act according to one’s judgment of the best course.” Id. (quotation omitted).[1] “For a complaint to survive a motion to dismiss, it *1274 must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.” Gaubert, 499 U.S. at 324-25, 111 S.Ct. at 1274-75.
B.
Before getting to the details of the government’s discretionary function challenge, we must address a preliminary question: whether our review is limited to the allegations in Mr. Douglas’s complaint, or whether we should consider the extrinsic evidence that the government filed in the District Court. The government attached several documents to its motion to dismiss, which was styled “alternatively” as a summary judgment motion. The District Court dismissed the case without considering this evidence or allowing Mr. Douglas to conduct discovery to respond to it.
When reviewing a discretionary function decision “entered on a motion to dismiss,” the standard of review is usually straightforward: we “accept all of the factual allegations in [the] complaint as true and ask whether the allegations state a claim sufficient to survive a motion to dismiss.” Gaubert, 499 U.S. at 327, 111 S.Ct. at 1276 (quotation omitted); see also Mesa v. United States, 123 F.3d 1435, 1437 (11th Cir.1997). The government says this rule doesn’t apply here because “this Court has long treated a section 2680 bar as jurisdictional.” According to the government, this means its attack on Mr. Douglas’s complaint is based on Rule 12(b)(1), which deals with subject matter jurisdiction, rather than Rule 12(b)(6), which asks if the plaintiff properly stated a claim. Whereas 12(b)(6) challenges are “facial” (meaning we accept the allegations in a complaint as true), 12(b)(1) challenges can be “factual” (meaning we can use extrinsic evidence). See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir.2009).
The problem with this argument is that the government expressly moved to dismiss based on Rule 12(b)(6). The District Court then granted the government’s motion based solely on the allegations in Mr. Douglas’s complaint. That means the dismissal was facial. See McElmurray v. Consol. Gov’t of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir.2007) (deciding that a dismissal for lack of subject matter jurisdiction was facial because “[t]he district court did not decide any issues of disputed fact”); Stalley ex rel. United States v. Orlando Reg’l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir.2008) (per curiam) (deciding that a subject matter jurisdiction challenge was “a facial attack on the complaint” because “the record establishes that the district court considered only the complaint and the attached exhibits”). If the District Court had decided a factual challenge, this case would have come to us in a very different form. That is because “in a factual challenge. the district court must give the *1275 plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.” McElmurray, 501 F.3d at 1251 (citing Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir.1981)). Mr. Douglas was not given these opportunities here. No matter the reason behind a dismissal, we can’t convert a facial dismissal into a factual one on appeal. If we did, we would be finding facts for the first time on appeal.
There is another reason to treat the government’s challenge as facial: the challenge turns on the merits of the overall case. “We have cautioned [ ] that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiffs cause of action. If a jurisdictional challenge does implicate the merits of the underlying claim then: ‘[T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiffs case.’ ” Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir.2003) (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir.1997)). This serves to protect “the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court’s discretion.” Id. (quotation omitted).[2]
The government’s discretionary function challenge is based on factual contentions that go right to the merits of the overall ease: questions like whether Mr. Douglas’s pay grade was correct, who can set this grade, who can 'review this decision, and when exactly Mr. Douglas’s pay vested. If the government wishes to press on with this challenge, “the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiffs case.” Id. (quotation omitted). The court can then address this challenge in the proper manner: after discovery and with the protections of either a trial or review on summary judgment.[3] In this appeal, we “accept all of the factual allegations in [the] complaint as *1276 true and ask whether the allegations state a claim sufficient to survive a motion to dismiss.” Gaubert, 499 U.S. at 327, 111 S.Ct. at 1276 (quotation omitted).
C.
At the pleading stage, Mr. Douglas must allege a plausible claim that falls outside the discretionary function exception. Autery v. United States, 992 F.2d 1523, 1526 n. 6 (11th Cir.1993). The exception does not cover government acts that “violated a mandatory regulation or policy that allowed no judgment” or acts that, although a permissible exercise of discretion, were not “grounded in the policy of the regulatory regime.” Id. at 1526-27 (quoting Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275). The relevant act alleged is Lt. Barker’s refusal at the payroll record data-entry stage to enter a wage amount that Mr. Douglas was entitled to receive because it was based on his pay grade and hours worked; the wages had been approved by Mr. Douglas’s supervisor; and Mr. Douglas’s right to the wages had vested. The record shows that BOP regulations allowed no discretion to refuse to pay the wages at that stage and that the refusal was not grounded in policy. The District Court erred in dismissing the claim on the basis of the pleading allegations.
1.
The BOP has promulgated regulations describing the process by which an inmate’s pay “becomes vested.” 28 C.F.R. § 545.26(h). These regulations generally give prisons discretion to decide which inmates will work and which types of work, if any, will be compensated at which pay grade. See id. § 545.25(b); id. § 545.26(a)-(b). But once an inmate’s work is assigned a pay grade and evaluated by his supervisor, the regulations make clear that the inmate is entitled to the pay that the supervisor computed. The regulations state that “[a]t the end of each month the work detail/program supervisor shall compute the hours worked by the inmate and the pay to be awarded for that month.” Id. § 545.26(e)(1). A supervisor is required to “rate the inmate’s performance,” “review the evaluation with the inmate,” and “request that the inmate sign the evaluation form.” Id. § 545.26(e)(3). Following this review, the regulations declare that “[a]n inmate’s performance pay, once earned, becomes vested.” Id. § 545.26(h).[4]
This process is exactly what Mr. Douglas says happened with his pay, up until Lt. Barker intervened. Mr. Douglas says his supervisor evaluated his work for both March and April 2012 and approved 154 hours of satisfactory work at Grade 1 each month. The supervisor then computed that Mr. Douglas would be paid $91.60 each month. Both the supervisor and Mr. Douglas then signed the evaluation. As *1277 suming these allegations are true, Lt. Barker had no discretion to input a lower pay grade at this point. According to the BOP’s own regulations, Mr. Douglas’s pay had already vested. A government employee’s conduct “is not discretionaryf ] if ‘a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.’ ” Ochran, 117 F.3d at 499 (quoting Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273). Once a supervisor evaluated Mr. Douglas’s work and computed his pay, the decision to pay him the computed amount was not discretionary. It was mandated by the BOP’s own regulations.
The District Court held otherwise. It reasoned that “[i]f the BOP has discretion with respect to work assignments, it follows that there is discretion with respect to the amount to pay prisoners for their work.” That is true. But Mr. Douglas has challenged something narrower. He says Lt. Barker changed his pay grade after BOP officials exercised discretion to approve his pay and his supervisor approved the hours he worked, in accordance with BOP regulations setting out how and when inmate pay vests. See 28 C.F.R. § 545.26(e)-(h). If discretion to set inmate pay is the same as discretion to withhold pay an inmate already earned, then the BOP’s entire regulatory scheme for inmate pay — codified through notice-and-comment rulemaking — would mean nothing. If a prison can at every point say that inmates haven’t earned their pay because the prison could have paid them less in the first place, then the rule wouldn’t be that “[a]n inmate’s performance pay, once earned, becomes vested.” 28 C.F.R. § 545.26(h). It would be: pay becomes vested only when the prison says so.
The government has one more argument for why Lt. Barker had discretion to withhold Mr. Douglas’s performance pay. It argues that the BOP’s pay regulations reference the ability of the “Warden” or “Department Head” to approve “bonus pay” and “special bonus” pay. See 28 C.F.R. § 545.26(f)-(g).[5] But the government doesn’t contend that Lt. Barker is a Warden or Department Head. It also doesn’t claim that anyone — let alone a Warden or Department Head — told Lt. Barker to lower Mr. Douglas’s pay. Even if the government had raised either of these contentions, we would have to ignore them at the 12(b)(6) stage. Besides, even if we assume that a Warden or Department Head ordered the reduction of Mr. Douglas’s pay, there’s another problem: the regulations only require Warden or Department Head approval for bonus pay, not performance pay. See id. For performance pay, the regulations say that pay vests after a “work detail/program supervisor” evaluates an inmate’s work and computes his pay. Id. § 545.26(e)(3).[6] Mr. Douglas says that is precisely what happened here: his supervisor evaluated his work and computed his pay, so it vested.
*1278 2.
Not only has Mr. Douglas plausibly alleged an act that disregarded and violated a mandatory BOP regulation, he has alleged a violation that was not grounded in policy. And, if as Mr. Douglas claims, Lt. Barker unilaterally altered Mr. Douglas’s wages out of racial animus, Lt. Barker’s conduct, even if discretionary, “cannot be said to be based on the purposes that the regulatory regime seeks to accomplish.” Gaubert, 499 U.S. at 325, 111 S.Ct. at 1275.
III.
The government offers a few more arguments on appeal. It says Mr. Douglas’s pay claim is barred by two additional FTCA exceptions: 28 U.S.C. § 2680(h), which bars claims based on “misrepresentation, deceit, or interference with contract rights,” and 28 U.S.C. § 2680(c), which bars “[a]ny claim arising in respect of ... the detention of any ... property by any ... law enforcement officer.” Neither bar was raised in the District Court, where the government moved to dismiss solely based on the discretionary function exception. But the government quotes our rule “that the judgment of a district court may be affirmed upon any adequate ground, even if it is other than the one on which the court actually relied.” Greenberg v. Nat’l Geographic Soc’y, 533 F.3d 1244, 1272 n. 28 (11th Cir.2008) (en banc).
Mr. Douglas responds that “a factual subject-matter jurisdiction argument” is not one of the grounds on which “this Court may affirm based on arguments never presented to the district court.” This is true. Again, a “factual attack” on subject matter jurisdiction “challenge^] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.” In re CP Ships Ltd. Sec. Litig., 578 F.3d 1306, 1311—12 (11th Cir.2009) (quotation omitted), abrogated on other grounds by Morrison v. Nat’l Australia Bank Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). If we decide this kind of challenge for the first time on appeal, we necessarily have to act as a fact finder. Here, both the § 2680(c) and the § 2680(h) challenges require us to look beyond the facts alleged in Mr. Douglas’s complaint.
First, “[t]he test in applying [the § 2680(h) ] exception is whether the essence of the claim involves the government’s failure to use due care in obtaining and communicating information.” JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C., 224 F.3d 1260, 1264 (11th Cir.2000). Mr. Douglas’s complaint does not claim “failure to use due care in obtaining or communicating information” to him. He does not allege that the prison made a false statement to him, deceived him, or entered into a contract with him. Instead, he says Lt. Barker wrongfully reduced his pay after it vested. Once the case gets past the pleadings stage, the government may offer proof that Mr. Douglas was in fact set for lower pay or that his pay didn’t vest until after Lt. Barker entered it. But we can’t hold Mr. Douglas responsible for raising this kind of claim without going beyond his complaint.
*1279 The same is true about § 2680(c), which bars “any claim arising in respect of ... the detention of any ... property by any ... law enforcement officer.” Mr. Douglas alleges that a prison official wrongfully interfered with his pay. This is not a claim that someone wrongfully took custody or possession of his property, like in both of the § 2680(c) cases the government cites. See Ali v. Bureau of Prisons, 552 U.S. 214, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); Krug v. United States, 442 Fed.Appx. 950 (5th Cir.2011) (per curiam) (unpublished). From the face of the complaint, Mr. Douglas has not raised a claim about “detention” of property.
IV.
Finally, Mr. Douglas argues that the District Court erred when it found that his remaining claims of discrimination, retaliation, and intentional infliction of emotional distress were not exhausted. Before filing an FTCA lawsuit, a plaintiff must fully exhaust administrative remedies for his claims. McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). The BOP has promulgated regulations describing how prisoners should file administrative FTCA claims against the BOP. 28 C.F.R. § 543.30. Prisoners may file suit only after the final agency action. Id. § 543.32(g).
Mr. Douglas failed to fully exhaust the BOP’s administrative remedies before filing suit. Mr. Douglas filed his claims through the BOP’s Administrative Remedy Program (ARP), which handles all inmate claims relating to confinement. This appears to be separate from the BOP’s procedure for inmate FTCA claims. See id. § 542.10(c); id. § 543.31. The government argues that exhausting through the ARP does not satisfy the FTCA’s exhaustion requirement. We need not decide this question now because Mr. Douglas submitted his earliest ARP appeal on July 31, 2012. This was weeks after he filed this suit. We therefore agree with the District Court that Mr. Douglas failed to fully exhaust administrative remedies before filing suit.
V.
For these reasons, we reverse the District Court on Mr. Douglas’s pay claim, affirm the remainder of the court’s holdings, and remand for further proceedings consistent with this opinion.[7]
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Justice Scalia's Gaubert concurrence spells out in more detail why the discretionary function exception focuses on whether the individual employee had discretion to make a choice, regardless of whether the agency as a whole had this same discretion:
The dock foreman's decision to store bags of fertilizer in a highly compact fashion is not protected by this exception because, even if he carefully calculated considerations of cost to the Government vs. safety, it was not his responsibility to ponder such things; the Secretary of Agriculture’s decision to the same effect is protected, because weighing those considerations is his task. In Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122 [100 L.Ed. 48] (1955), the United States was held liable for, among other things, the failure of Coast Guard maintenance personnel adequately to inspect electrical equipment in a lighthouse; though there could conceivably be *1274 policy reasons for conducting only superficial inspections, the decisions had been made by the maintenance personnel, and it was assuredly not their responsibility to ponder such things. This same factor explains why it is universally acknowledged that the discretionary function exception never protects against liability for the negligence of a vehicle driver. The need for expedition vs. the need for safety may well represent a policy choice, but the Government does not expect its drivers to make that choice on a case-by-case basis.
499 U.S. at 335-36, 111 S.Ct. at 1280 (Scalia, J., concurring) (citations omitted).

. Other courts have applied this rule specifically to the discretionary function exception. See, e.g., Young v. United States, 769 F.3d 1047, 1052-53 (9th Cir.2014); S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 344 (3d Cir.2012); Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir.1999). And this Court has used the same reasoning to reverse a 12(b)(1) dismissal that was based on another FTCA exception. See Lawrence v. Dunbar, 919 F.2d 1525, 1530 (11th Cir.1990) (per curiam) (“When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction.”).
Also, our Court recently questioned whether the FTCA’s exceptions are a limit on subject matter jurisdiction. See Zelaya v. United States, 781 F.3d 1315, 1339 (11th Cir.2015). Other courts have said they aren’t. See, e.g., Parrott v. United States, 536 F.3d 629, 634 (7th Cir.2008). Zelaya reviewed these cases, along with recent Supreme Court cases holding that similar limits on the scope of other statutes do not implicate the court's subject matter jurisdiction. See 781 F.3d at 1339-40. But the Court ended up holding that this distinction didn’t matter in that case because the outcome would have been the same under both 12(b)(1) and 12(b)(6). Id. at 1340. We need not address this question today either. Here, the District Court decided a facial challenge based on Rule 12(b)(6). We cannot convert this facial challenge into a factual one for the first time on appeal.

. The government is wrong to criticize Mr. Douglas for arguing we should not consider .a BOP Program Statement the government attached to its motion to dismiss while "himself *1276 readily reifying] on the federal regulations reiterated in the Bureau of Prisons' applicable Program Statement.” The reason Mr. Douglas can cite, and we can rely on, the BOP’s regulations is not because they are "reiterated” in a program statement. It’s because they have the force of law. See Albertson’s, Inc. v. Kirkingburg, 527 U.S. 555, 570, 119 S.Ct. 2162, 2171, 144 L.Ed.2d 518 (1999).

. We are aware of no case interpreting this language. But the text is clear. "Earn” means "[t]o acquire by labor, service, or performance,” or "[t]o do something that entitles one to a reward or result, whether it is received or not.” Black’s Law Dictionary 620 (10th ed.2014). "Vest” means “[t]o give (a person) an immediate, fixed right of present or future enjoyment.” Id. at 1794. Thus, once an inmate does the work the prison requires, he enjoys an "immediate, fixed right of ... enjoyment” in any performance pay that was promised.

. The government’s brief never cites a specific regulation in making this argument. Instead, it mostly refers to the extrinsic evidence the government filed in the District Court. While this extrinsic evidence sometimes quotes the regulations, the government’s brief often refers to the evidence without any citation to the record. We are therefore left to assume that the government is referring to 28 C.F.R. § 545.26(f) — (g).

. Along the same lines, the evaluation form attached to Mr. Douglas’s complaint has a blank "Signature and Date of Dept. Head Approval” field. The parties didn't address this field until asked about it at oral argument, but it could be read to require a Department Head's approval for inmate pay. On the other hand, the field sits below a section marked "Bonus Justification.” This implies that the signature is for bonuses, not performance pay. That would be consistent *1278 with the regulation, which requires Department Head approval for "bonus pay” and "special bonus pay” but not for "performance pay.” See 28 C.F.R. § 545.26(f)-(g). At the very least, this is another factual dispute. At the Rule 12(b)(6) stage, we must accept Mr. Douglas's allegations that his supervisor computed his performance pay, just as the regulation requires.

. This opinion is fully consistent with Judge Tjoflat's concurrence, and in keeping with his characterization of the current state of the law.