[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10963
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cv-01993-KOB

ASHLEY WILCOX PAGE,

Plaintiff - Appellant,

versus

TODD L. HICKS,
NNA, CRNA,
SUSAN P. MCMULLAN,
PhD, CRNA,
PETER M. TOFANI,
MS, LTC (R),
UNIVERSITY OF ALABAMA AT BIRMINGHAM,
UNIVERSITY OF ALABAMA, BOARD OF TRUSTEES,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 10, 2019)

Before TJOFLAT, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Ashley Page appeals the district court's order dismissing her claims against the University of Alabama at Birmingham's Board of Trustees and several UAB employees based on her removal from UAB's School of Nursing Anesthesia. Specifically, Page sued the Board of Trustees and UAB employees Todd L. Hicks, Susan P. McMullan, and Peter M. Tofani under 42 U.S.C. § 1983 for violating her procedural- and substantive-due-process rights to continued enrollment in the Nursing Anesthesia program, seeking both monetary damages for her time enrolled and reinstatement in the program. After careful review, we affirm the district court's dismissal of all claims.

**I**

Ashley Page enrolled in the University of Alabama at Birmingham's Nursing Anesthesia Program in August 2014. In August 2016, as part of the curriculum, Page began a clinical rotation at Baptist South Hospital in Montgomery, Alabama. A few weeks later, she received a call from UAB's clinical coordinator notifying her of a required meeting with Appellee Susan P. McMullan, the Nursing Anesthesia Program Director.

At the meeting, McMullan showed Page three negative clinical evaluations from staff at Baptist South Hospital, which McMullan had received from Professor

2

Todd L. Hicks.[1]  McMullan then informed Page that she would be receiving a failing grade in her clinical course and that she would be dismissed from the Nursing Anesthesia program immediately.  At the meeting's end, Appellee Peter M. Tofani, Dean of Student Affairs, provided Page with his contact information in case she decided to appeal the dismissal decision.

Following the meeting, some confusion ensued about whether Page's dismissal was effective immediately or would instead take effect at the end of the semester.  After receiving copies of the evaluations leading to her dismissal, Page met with Tofani and John Updegraff, Director of Student Affairs.  Tofani informed Page at that time that her dismissal would be effective at the semester's end and that she would not be reinstated.  Page then appealed the decision to the Dean of the Nursing School.  The Dean responded by scheduling an Advisory Committee Hearing Panel to review Page's appeal.  At the hearing, Page had two lawyers present and questioned witnesses, although several UAB employee witnesses whom Page wished to question were not present.  A few weeks after the hearing, the panel upheld Page's dismissal.

---

[1] Throughout the proceedings, Page has insisted that one of the three evaluations concerned another student in the program.  Taking the facts alleged in the light most favorable to Page as the non-moving party, this opinion considers only the two undisputed evaluations.  *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam) (explaining that, in reviewing a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the [non-moving party]").

Page sued the UAB Board of Trustees, along with McMullan, Hicks, and Tofani, for due process violations, requesting monetary damages and reinstatement as a student in the Nursing Anesthesia program.[2]  The defendants moved to dismiss all claims.  The district court dismissed the claims against the Board of Trustees on the basis that it was entitled to Eleventh Amendment immunity.  The court also dismissed all claims against the individual defendants, finding first that all defendants were entitled to Eleventh Amendment immunity for the monetary-damages claims against them in their official capacities, and second, that Page had failed to state a claim upon which relief could be granted.

## II

Page asserts that each defendant violated her procedural- and substantive-due-process rights by dismissing her without following the Nursing School's established procedures.[3]  We will first consider Page's claims against the Board of Trustees, followed by her claims against the individual UAB employees.  In so doing, we will review *de novo* the district court's dismissal of claims both for

---

[2] Page also brought state-law negligence claims against each individual defendant.  But after dismissing each of Page's federal claims, the district court properly exercised its discretion to dismiss without prejudice her accompanying state-law claims.  *See Raney v. Allstate Ins., Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (encouraging district courts to dismiss state claims when no federal claims remain).  Page's state-law claims are not before us on appeal.

[3] Page's complaint vaguely references "due process"; however, because she sought both monetary and injunctive relief the district court construed the complaint as alleging both substantive- and procedural-due-process claims and analyzed them as such.  We do the same here.

Eleventh Amendment immunity, *see Garrett v. University of Alabama at Birmingham Board of Trustees*, 344 F.3d 1288, 1290 (11th Cir. 2003) (per curiam), and for failure to state a claim upon which relief can be granted, *Douglas v. United States*, 814 F.3d 1268, 1273–75 (11th Cir. 2016).

## A

Page sued the Board for both monetary and injunctive relief—specifically, for her lost tuition and for reinstatement in the Nursing Anesthesia program. She is entitled to neither, but for two different reasons.

First, the Board is immune from liability for monetary damages. Under the Eleventh Amendment, "the 'Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States' by citizens of another State, U.S. Const., Amdt. 11, and (as interpreted) by its own citizens." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). That being said, a State remains free to waive its immunity from suit in a federal court. And in *Lapides*, the Supreme Court held that a State necessarily waives its immunity from suit when it removes a proceeding to federal court. 535 U.S. at 618–19. Relevant to this case, state universities, such as UAB, are "arms of the state" and thus are entitled to Eleventh Amendment immunity. *See Harden v. Adams*, 760 F.2d 1158,

1163 (11th Cir. 1985) (holding that the Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University).

Page contends that the Board waived its Eleventh Amendment immunity from liability by removing the case to federal court. But Page misunderstands *Lapides*, which held that a State's removal to federal court waives "its immunity from a federal forum"—that is, its immunity from *suit*, not from liability. *Stroud v. McIntoch*, 722 F.3d 1294, 1302 (11th Cir. 2013). We have clarified that "nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims." *Id*. Here, no one contests that the Board waived its Eleventh Amendment immunity from suit by removing the case to federal court. But under this Court's precedent interpreting *Lapides*, this removal did not affect the Board's immunity from liability for monetary damages.

Page also seeks relief from the Board in the form of reinstatement as a student at UAB. Generally, "requests for reinstatement"—like the one Page brings—"constitute prospective injunctive relief that fall within the scope of the *Ex parte Young* exception and, thus, are not barred by the Eleventh Amendment." *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (quotation marks omitted). This exception, however, applies only to state officers—"suits against the States and their agencies, . . . are barred regardless of the relief sought."

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Because the Board is an "arm of the state" itself—and not an individual officer—Page's request for injunctive relief against the Board fails too.  *See, e.g.*, *Harden*, 760 F.2d at 1163.

**B**

**1**

Next, we consider Page's claims against the individual defendants.[4] Looking first to her procedural-due-process claim, the parties agree that "a § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  *Cook v. Randolph County*, 573 F.3d 1143, 1148–49 (11th Cir. 2009) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  The Supreme Court has not addressed whether a graduate student has a constitutionally-protected liberty or property interest in her continued enrollment at a public university, although the Court presumed without deciding the existence of such a right in *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 84–85

---

[4] Page's monetary-damages claims against the individual defendants in their *official* capacities are barred for the same reason that her monetary-damages claims against the Board-as-an-arm-of-the-State are barred.  *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995) ("Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent.") (citations omitted).

(1978). And while this Court has held that, outside of a state university's proper application of its own disciplinary procedures for behavioral misconduct, a student has a "legitimate claim of entitlement to remain enrolled," *Barnes v. Zaccari*, 669 F.3d 1295, 1304 (11th Cir. 2012), we have not extended that holding from the disciplinary to the academic context.

Even assuming, though, that Page held a constitutionally-protected property interest in her enrollment at UAB, we cannot say, on these facts, that she has alleged constitutionally-inadequate process.[5] To start, the Supreme Court has rejected the contention that, in an academic-dismissal case, a school's failure to follow its own procedures in and of itself amounts to a due process violation. *See Horowitz*, 435 U.S. at 92 n.8. This Court has also made clear that the standards guiding academic dismissals are not as "strict" as those governing disciplinary actions. *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir. 1986). Indeed, under our precedent, "[f]ormal hearings are not required in academic dismissals"— instead, "the decision-making process need only be 'careful and deliberate.'" *Id.* (quoting *Horowitz*, 435 U.S. at 85). Our case law also explains that even when a state's pre-deprivation process is less than perfect, it is "only when the state refuses to provide a process sufficient to *remedy* the procedural deprivation [that] a

---

[5] The second prong—the presence of state action—is undisputed.

8

constitutional violation actionable under section 1983 arise[s]." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) (emphasis added).

The question for our purposes, then, becomes whether Page has alleged a lack of "careful and deliberate" process surrounding her dismissal, rising to the level of constitutionally-inadequate process. We think not. Although Page points to the somewhat confused and confusing initial communications surrounding her dismissal as proof of improper process, it is clear from the facts alleged in her complaint that any less-than-perfect pre-deprivation process was remedied. *See McKinney*, 20 F.3d at 1557. First, immediately following Page's initial meeting with McMullan, Assistant Dean Tofani provided Page with his contact information in order to facilitate any appeal she might wish to pursue. Next, Page both wrote to and personally met with several levels of Nursing School staff and administrators to contest the decision, including the Program Director and the Dean of the Nursing School. Finally, UAB provided Page with *more* than what is constitutionally required for academic dismissals: a formal panel hearing at which she was able to appeal the decision, present and cross-examine witnesses, and plead her case for several hours. *See Haberle*, 803 F.2d at 1539 (stating that "careful and deliberate" process rather than a "formal hearing" is all that is required in an academic dismissal).

Because Page's complaint makes clear that UAB went above and beyond the level of "careful and deliberate" consideration required to ensure a constitutionally-adequate process in the academic-dismissal context, and that any notification deficiencies were remedied through plentiful post-deprivation processes, she has failed to state a procedural-due-process claim against McMullan, Hicks, or Tofani in either their individual or official capacities.

**2**

Page also claims that the individual defendants violated her substantive-due-process rights by dismissing her "intentionally, willfully, negligently, maliciously, with deliberate indifference, and/or with a reckless disregard for the natural and probable consequences of their act." This claim also fails. In *Regents of University of Michigan v. Ewing*, the Supreme Court assumed without deciding that a medical student had a constitutionally-protected, substantive-due-process right in his continued enrollment in medical school. 474 U.S. 214, 222–23 (1985). In evaluating the medical student's claim, the Court cautioned that "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Id*. at 225. Judges "[p]lainly" should not "override" faculty decisions concerning academic dismissals, the Court continued, unless a decision represents "such a substantial departure from accepted academic norms as to demonstrate that the

10

person or committee responsible did not actually exercise professional judgment." *Id.* This is because an academic-dismissal decision requires "an expert evaluation of cumulative information" that is "not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id*. at 226 (quoting *Horowitz*, 435 U.S. at 90).

Here, nothing in Page's complaint indicates that the individual defendants "substantial[ly] depart[ed]" from academic norms in a manner that would require judicial "override." *Ewing*, 474 U.S. at 225. Clinical supervisors evaluated Page's nursing and found it to be "unsafe," the negative clinical evaluations resulted in a failing grade, Page was dismissed for failing her clinicals, and her appeal was thoroughly considered. In the absence of any allegations tending to show that UAB faculty members abdicated their responsibility to exercise professional judgment, Page fails to state a substantive-due-process claim against McMullan, Hicks, or Tofani in either their individual or official capacities.

## III

In sum, the district court properly dismissed all claims. The Board of Trustees of the University of Alabama at Birmingham is entitled to Eleventh Amendment immunity. The individual defendants acting in their official capacities also are entitled to Eleventh Amendment immunity as to the monetary damages,

and Page has otherwise failed to state a procedural- or substantive-due-process

claim against them in their individual or official capacities.

**AFFIRMED.**