[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12574
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00025-RH-CAS


KYLE RAY HURST, Personal Representative of
the Estate of Andrew James Hurst on behalf of
the Estate of Andrew James Hurst Deceased and
the Statutory Wrongful Death Survivors of Andrew
James Hurst,

                                        Plaintiff-Appellant,


versus


UNITED STATES OF AMERICA, acting by and
through the Department of the Agriculture US
Forest Service,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 13, 2019)

Before MARCUS, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Kyle Ray Hurst ("Hurst"), as personal representative of his deceased son's estate and also on behalf of his son's statutory wrongful death survivors, sued the United States government for damages for wrongful death under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (the "FTCA"), and relevant laws of the State of Florida, after his son died of an apparent drug overdose at a gathering of the Rainbow Family of Living Light (the "Rainbow Family") in the Apalachicola National Forest. He appeals the district court's order granting the government's motion to dismiss for lack of subject-matter jurisdiction and, alternatively, granting the government's motion for summary judgment. Because both holdings of the district court involved sufficiently intertwined jurisdictional-merits issues, we exercise our discretion to address in this opinion only the latter alternative holding.[1] On appeal, Hurst argues that the district court erred by granting the government's motion for summary

---

[1] Hurst also challenges the district court's decision to grant the government's 12(b)(1) motion to dismiss on grounds that the discretionary function exception under the FTCA does not apply in this case because the government failed to perform several mandatory government functions with respect to the Rainbow Family gathering at Moore Lake. In light of our holding that Hurst's claims against the government are barred under the FTCA because Hurst has not carried his burden of showing that an individual person would be liable under Florida law in similar circumstances, we need not address this additional argument raised by Hurst.

2

judgment because the Florida Recreational Use Statute, Fla. Stat. § 375.251 (the "FRUS"), does not apply in this case.  We have reviewed the parties' briefs, relevant portions of the record, and applicable law.  For the reasons described below, we affirm the district court's decision dismissing Hurst's claims.

## I.  BACKGROUND

We assume the parties are familiar with the factual and procedural background of this case and recount that background here only to the extent necessary to provide context for our decision.  Hurst's 16-year-old son Andrew James Hurst died on or about March 9, 2013 while attending the Sixth Annual A-cola North Florida/Apalachicola Rainbow Gathering at Moore Lake.  The gathering was hosted by the Rainbow Family, which according to Hurst "is known to be the largest non-organization of non-members in the world without official leaders or structures."  Although the Rainbow Family aims to "honor[] Mother Earth" and "promote peace and love on Earth," its gatherings are also known for "the sale, distribution, and use of controlled substances."

Moore Lake, the site of the relevant Rainbow Family gathering, is located on the Florida Panhandle near Tallahassee.  It is also located inside the Apalachicola National Forest, which is administered by the United States Forest Service ("USFS").  Although there are designated recreation areas within the Apalachicola National Forest that require guests to pay a fee and from which the government

3

derives revenue, Moore Lake and the area surrounding it is not such an area. The closest recreation area inside the Apalachicola National Forest that charges a fee and generates government revenue is Silver Lake, which is located approximately three to four miles away from the Moore Lake area.

The USFS issued a special use permit to the Rainbow Family for its 2013 gathering at Moore Lake. The permit allowed the Rainbow Family to use a three-square-mile area near Moore Lake for its gathering. It expressly authorized the Rainbow Family to conduct certain enumerated activities, including "recreational gathering," camping, and swimming. The permit also required the Rainbow Family to comply with federal, state, county, and municipal laws. Sadly, Hurst's son died while attending the 2013 Rainbow Family gathering. An autopsy determined that the cause of death was the toxic substance 2C-C-NBOME, a psychedelic and illegal drug.

After exhausting administrative remedies, Hurst brought a wrongful death action for damages against the United States government under the FTCA and relevant laws of the State of Florida. In essence, Hurst alleged that the government should not have issued the special use permit for the Rainbow Family gathering in the first place (because it was aware of the Rainbow Family's reputation for criminality, including the sale, distribution, and use of controlled substances) and, once it did, it should have performed several non-discretionary governmental

4

functions that possibly would have prevented Hurst's son's death (including, as relevant to this appeal, creating a law enforcement plan, patrolling the gathering, and cooperating with local police in enforcing applicable laws).

The government moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Hurst failed to state a claim on which relief could be granted. It argued, as it does here, that the FTCA provided no relief for Hurst's claims because the FRUS would bar claims against a private person or individual under Florida law in similar circumstances. The district court converted the Rule 12(b)(6) motion to a motion for summary judgment. The district court then granted the government's converted motion for summary judgment on grounds that the FRUS would bar recovery under the FTCA. It entered judgment dismissing all of Hurst's claims. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. Swafford v. United States, 839 F.3d 1365, 1369 (11th Cir. 2016). Summary judgment is appropriate if the record shows "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

5

### III.  DISCUSSION

The district court did not err when it granted the government's motion for summary judgment on grounds that the FRUS would bar recovery against the government in this case.  The United States, as a sovereign power, "is immune from suit unless it consents to be sued."  Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015).  With respect to certain tort claims, the FTCA waives this "traditional all-encompassing immunity" under particular circumstances.  Douglas v. United States, 814 F.3d 1268, 1280 (11th Cir. 2016) (Tjoflat, J., concurring) (quoting Rayonier Inc. v. United States, 352 U.S. 315, 319, 77 S. Ct. 374, 377 (1957)).  As relevant to our disposition of this appeal, § 2674 of the FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674 (emphasis added).  A related jurisdictional statute grants the district courts of the United States "exclusive jurisdiction of civil actions on claims against the United States . . . for personal injury or death . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1) (emphasis added); see also Zelaya, 781 F.3d at 1322–24 (discussing interplay between § 1346(b)(1) and § 2674).  In other words, two relevant provisions of federal law

work together to "preclude liability of the federal government absent a showing by the plaintiff that a private individual . . . in like circumstances[] would be liable for the particular tort under governing state law where the tort occurred." Zelaya, 781 F.3d at 1323. As plaintiff, it is Hurst's burden to make this showing. See id.; Douglas, 814 F.3d at 1282 n.3 (Tjoflat, J., concurring) (citing 28 U.S.C. § 1346(b)(1)).

In turn, relevant Florida law (the FRUS) provides individual owners of land with certain legal protections when they make their land available to the public for certain purposes without charging a fee. See generally Fla. Stat. § 375.251. The relevant statutory language is as follows:

> An owner or lessee who provides the public with an area for outdoor recreational purposes owes no duty of care to keep that area safe for entry or use by others, or to give warning to persons entering or going on that area of any hazardous conditions, structures, or activities on the area. An owner or lessee who provides the public with an area for outdoor recreational purposes:
>
> 1. Is not presumed to extend any assurance that the area is safe for any purpose;
>
> 2. Does not incur any duty of care toward a person who goes on the area; or
>
> 3. Is not liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the area.

Id. § 375.251(2)(a). The FRUS defines "area" to include "land, water, and park areas," and "outdoor recreational purposes" to include, without limitation,

"hunting, fishing, wildlife viewing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic, or scientific sites." Id. § 375.251(5). The FRUS further acknowledges "that an area offered for outdoor recreational purposes may be subject to multiple uses," and that the limitation of liability applies "only if no charge is made for entry to or use of the area for outdoor recreational purposes and no other revenue is derived from patronage of the area for outdoor recreational purposes."[2] Id. § 375.251(2)(c). The FRUS limitation of liability also does not relieve the landowner of any liability "that would otherwise exist for deliberate, willful, or malicious injury to persons or property." Id. § 375.251(4).

Thus, subject only to a limited number of exceptions, the Florida legislature made it clear that the purpose of the FRUS "is to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational

---

[2] Courts applying Florida law have construed this limitation relatively strictly. See, e.g., Fernandez v. United States, No. 17-cv-21422, 2017 WL 6343575, at *2–4 (S.D. Fla. Dec. 12, 2017) (granting motion to dismiss in favor of the United States because "a plain reading of the statute as [a] whole suggests that liability will not attach unless the injury occurred in the distinct area where revenue is derived from patronage," even though revenue was generated in other areas inside the same national park), aff'd 766 F. App'x 787 (11th Cir. 2019) (unpublished); accord Kleer v. United States, 761 F.2d 1492 (11th Cir. 1985). Hurst has not argued on appeal that the area surrounding Moore Lake in which the 2013 Rainbow Family gathering occurred is an area (or part of an area) where a charge is made for entry or where revenue is derived from outdoor recreational activities, and therefore has abandoned any challenge to the district court's dismissal of his claims on that basis. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants [us] to address should be specifically and clearly identified in the brief. . . . Otherwise, the issue—even if properly preserved at trial—will be considered abandoned.").

purposes by limiting their liability to persons using these areas and to third persons who may be damaged by the acts or omissions of persons using these areas." Id. § 375.251(1).

Hurst presents two arguments on appeal with respect to the FRUS. Neither argument is persuasive. First, Hurst argues that the Rainbow Family used the Moore Lake area for criminal activity (i.e., illegal drug use) and not for "outdoor recreational purposes" as contemplated by the FRUS. But, this argument ignores the plain language of the FRUS, which clearly acknowledges that "that an area offered for outdoor recreational purposes may be subject to multiple uses," and that camping and swimming—two of the activities expressly authorized by the special use permit issued by the USFS to the Rainbow Family in connection with the 2013 gathering—are included within the FRUS definition of "outdoor recreational purposes."[3] Moreover, the FRUS clearly provides that landowners covered by the statute have no duty to warn of any hazardous activities on the area and also are "not liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the area." This indicates to us that once land is made available to the public for legitimate outdoor recreational purposes at no

---

[3] Based on our review of the record (including evidence of what has occurred at other Rainbow Family gatherings and the characteristics of Moore Lake and the Apalachicola National Forest), it also is likely that the Rainbow Family used the Moore Lake area for other outdoor recreational purposes under the FRUS, including wildlife viewing, nature study, and visiting scenic sites.

9

charge, immunity under the FRUS still attaches even if the unlawful acts or omissions of persons present at the property cause injury.

This is not to suggest that the USFS could issue a special use permit for the sole purpose of providing the Rainbow Family (or any other group) with an area to sell and use illegal drugs; it clearly could not. But Hurst has not pointed to—and we are unaware of—any Florida authority indicating that, when an area of property is used for more than one purpose, at least one of which clearly qualifies as an "outdoor recreational purpose" under the FRUS, immunity under the FRUS is abrogated by the fact that the public also uses the land for a purpose that is not an "outdoor recreational purpose" or even by the fact that the public also uses the land for an unlawful purpose. The absence of such authority—together with the clear statutory language acknowledging that land may be subject to multiple uses and that a landowner need not warn of hazardous activities and will not liable for acts or omissions of persons using the area so long as they do not charge a fee or act deliberately, willfully, or maliciously to cause injury[4]—means that Hurst has failed to carry his burden of showing that the FRUS does not limit the government's FTCA liability under the circumstances of this case.

---

[4] Although Hurst argued below that the FRUS limitation of liability should not apply because the government acted deliberately, willfully, or maliciously, he does not challenge on appeal the district court's conclusion that "the record includes no evidence supporting the claim that the government deliberately, willfully, or maliciously injured [Hurst's son]." Although we are inclined to agree with the district court on this point, we decline to address this issue because Hurst has abandoned it on appeal. See Access Now, 385 F.3d at 1330.

10

Second, Hurst argues that the FRUS does not apply to government entities like the United States.  In support of this argument, he points to cases from the Florida state courts holding that the FRUS does not protect government entities but instead only protects individual persons.  See, e.g., City of Pensacola v. Stamm, 448 So. 2d 39, 41 (Fla. 1st DCA 1984) (concluding that "section 375.251 is intended to encourage private persons and entities to open their private lands for public recreational use" and that "it is not intended to protect governmental entities already charged with that responsibility").  This argument misunderstands the necessary interplay between the FTCA and state tort law.  The United States is only liable in tort—and the federal district courts only have jurisdiction to entertain suits against the United States—in cases where a "private individual [would be liable] under like circumstances," 28 U.S.C. § 2674, and in cases "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1).  Accord Zelaya, 781 F.3d at 1322–24.  Because Hurst has failed to carry his burden of showing that a "private individual" or a "private person" would be liable under the circumstances of this case (i.e., that the FRUS would not apply to shield a private landowner from liability), we conclude that the United States has not waived its "traditional all-encompassing immunity," Douglas, 814 F.3d at

11

1280 (Tjoflat, J., concurring), and thus cannot be held liable in tort under the FTCA.[5]

## IV.  CONCLUSION

We hold that the district court did not err when it granted the government's converted motion for summary judgment on grounds that an applicable Florida law, the FRUS, shields the government from tort liability under the FTCA.  This is because Hurst has not carried his burden of showing that a private person or individual would be liable under the circumstances of this case, as required by relevant provisions of the FTCA.  The judgment of the district court is therefore

**AFFIRMED.**[6]

---

[5] Indeed, Hurst seems to agree with this conclusion in his brief on appeal.  In particular, he acknowledges that "[o]f course, federal courts have previously reviewed claims against the United States under both the FTCA and the [FRUS], and these courts have held that the statutes together absolve the United States from liability."  Appellant's Br. 25.  This is precisely what we hold today, and the fact that Florida courts reviewing claims not involving the FTCA have held that the FRUS does not shield state governmental actors from liability is immaterial.

[6] Any other arguments asserted on appeal by Hurst are rejected without need for further discussion.